David J. OSTRACH, Plaintiff,

v.

**REGENTS OF THE UNIVERSITY OF CALIFORNIA, Dennis Schimek, David Hinton, Howard Bailey, Gary Schultz, and Larry Vanderhoff, Defendants.**

**Civ. No. S–96–1507 LKK/GGH.**

United States District Court,
E.D. California.

March 17, 1997.

Larry P. Schapiro, Ruiz and Schapiro, Sacramento, CA, for plaintiff.

Thomas F. Bertrand, Bertrand, Fox and Elliot, San Francisco, CA, for defendants.

## ORDER

KARLTON, Chief Judge Emeritus.

On August 20, 1996, plaintiff David Ostrach filed a nineteen-page complaint alleging ten different causes of action. That complaint is before the court on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). After oral argument, the court took the matter under submission. The motion will be addressed comprehensively in an unpublished order. Below, the court extracts its discussion of two of the causes of action for publication.[1]

## I.

## THE COMPLAINT

The plaintiff, a Caucasian Jewish male, is a Ph.D. candidate in Comparative Pathology. For seven years, he was employed by the School of Veterinary Medicine at UC Davis, ultimately being promoted to "Staff Research Associate IV." He was terminated from his job in September of 1995. Plaintiff alleges that he suffers from "Ehler–Danlos Syndrome," which he claims causes him difficulty with fine manual dexterity and repetitive motion. He alleges that his employer, his major professor/work supervisor, and other University of California employees[2] discharged him and discriminated against him in the terms of his employment and his rights as a student on account of his disability, race, and religion.

## II.

## THE AMERICANS WITH DISABILITIES ACT

Plaintiff's claim under the Americans with Disabilities Act ("ADA") appears to be asserted against all the defendants. He apparently contends that various defendants sought to remove him from working on his Ph.D. project because of his disability, and that he was discharged in retaliation for having filed a grievance asserting discrimination on the basis of his alleged disability. These claims implicate 42 U.S.C. §§ 12112(a)[3] and 12203(a).[4] I address the two provisions *seriatim.*

---

1. This court has long engaged in the practice of publishing only limited portions of its opinions. My reasons for doing so were first explained in *Kouba v. Allstate Insurance Co.*, 523 F.Supp. 148, 151 n. 2 (E.D.Cal.1981), *rev'd on other grounds*, 691 F.2d 873 (9th Cir.1982).

2. Plaintiff named the following defendants in this action: the Regents of the University of California ("UC Regents"); David Hinton (plaintiff's work supervisor and major professor); Dennis Schimek (Associate Vice Chancellor for Human Resources at University of California, Davis ("UC Davis")); Gary Schultz (Assistant Dean of Administration at UC Davis School of Veterinary Medicine); Larry Vanderhoef (Chancellor of UC Davis); and Howard Bailey (a supervisory employee of UC Regents and Hinton). Defendant Bailey was never served and was subsequently dismissed at a Status Conference held on December 2, 1996.

3. Section 12112(a) provides:
   **General rule**
   No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
   42 U.S.C. § 12112(a).

4. Section 12203 of the Americans with Disabilities Act provides:

   **(a) Retaliation** No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.

   \*  \*  \*  \*  \*  \*

   **(c) Remedies and Procedures** The remedies and procedures available under sections 107, 203, and 308 of this Act shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to title I, title II and title III, respectively.
   42 U.S.C. § 12203(a) & (c).

## A. 42 U.S.C. § 12112(a)

Plaintiff has sued various individual defendants under § 12112(a). He thus raises the question of whether anyone but the employer may be sued under this provision.

Section 12112(a) forbids discrimination by any "covered entity." The Act defines a "covered entity" as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). In turn, "employer" is defined as "a person engaged in an industry affecting commerce who has 15 or more employees ... and any agent of such person...." 42 U.S.C. § 12111(5)(A). This definition tracks Title VII's definition of "employer." *Compare* 42 U.S.C. § 12111(5)(A) *with* 42 U.S.C. § 2000e(b).

The Ninth Circuit has held in *Miller v. Maxwell's Intern., Inc.*, 991 F.2d 583 (9th Cir.1983), *cert. denied sub nom. Miller v. La Rosa*, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994), that liability under § 2000e–2(a)(1) does not extend to individual defendants. *See also U.S. E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1280 (7th Cir.1995) (finding four out of five circuits that have examined the issue under analogous provisions of Title VII and the ADEA have rejected individual liability). In *Miller*, the majority argued that since "Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees." *Miller*, 991 F.2d at 587. The majority also contended, adopting the assertion of the district court, that the "obvious purpose" of including "any agent of the employer" in the definition of "employer" in Title VII was "to incorporate respondeat superior liability into the statute." *Id.* To say the least, the rea-

soning supporting *Miller's* conclusion is less than convincing.

By its express language, Title VII renders both an employer and its agents expressly liable.[5] This explicit statutory language gives rise to the two separate propositions embodied in the plain meaning rule. First, is the principle that Congress means what it says, so that "the statutory language is normally the best evidence of congressional intent." *Church of Scientology v. U.S. Dept. Of Justice*, 612 F.2d 417, 421 (9th Cir.1979). Second, if the language of a statute is clear "there is no need to interpret the language." *Id.* The conclusion reached in *Miller* violates both aspects of the rule. The Circuit concedes that a plain meaning reading imposing liability on agents "is not without merit." *Miller*, 991 F.2d at 583, 587. Nonetheless, the *Miller* majority refuses to honor that plain meaning; instead, it interprets the statute by resort to misguided precedent and an undocumented legislative purpose, the basis of which rests primarily on unproven empirical suppositions about employer motivations. *Id.* at 587–88.

The reliance on supposed legislative purpose is highly suspect since there is no citation to the legislative history or any other source in support. The reason for that reticence seems plain enough. If resort to legislative history were proper relative to the statute, its examination would lend no support to the *Miller* construction. There simply is a paucity of legislative history dealing with supervisor liability. *See* Lamberson, *Personal Liability for Violations of Title VII: Thirty Years of Indecision*, 46 Baylor L.Rev. 419, 426–27 (1994).[6] Accordingly, *Miller's* assertion concerning legislative intent, divorced from both text and legislative

---

**5.** As I explain in the text, not only does the statutory language clearly create individual liability, any contrary reading violates established canons of statutory construction.

**6.** Moreover, the scant legislative history which exists suggests that Congress created the minimum employee threshold, not to protect individual employees, but to justify jurisdiction for the Act under the Commerce Clause. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1322 (2d Cir.1995) (Parker, J., dissenting) (citing 110 Cong.Rec. 6566, 6548, 7052, 7054, 7088 & 7207–12). As

Judge Parker notes, even when Congress debated Title VII's impact upon small businesses, the debate focused on the personal nature of small businesses; there was never a suggestion, either during the 1964 debates or in the 1991 Amendments, that ordinary civil remedies should not be available against individual supervisors who are directly responsible for discrimination. *Id.* at 1322–1323; *see also* Lamberson, *Personal Liability for Violations of Title VII: Thirty Years of Indecision*, 46 Baylor L.Rev. 419, 426–27 (1994).

history, is most charitably described as speculative.

Nor is the absence of any basis for the *Miller* court's conclusion that the "obvious purpose" of the "agent" provision was to incorporate *respondeat superior* liability the only reason for rejecting the circuit's rationale. As I now explain, rules of construction also militate against that conclusion.

Canons of construction counsel against a finding that statutory language is surplusage. *See United States v. Mehrmanesh,* 689 F.2d 822, 829 (9th Cir.1982) (court may not construe statute so as to make any part of it "mere surplusage"). Adoption of *Miller's* conclusion, however, renders the very language it purports to construe, surplusage. By making employers liable, the statute necessarily implies the doctrine of *respondeat superior. See* Greer, *"Who Me?" A Supervisor's Individual Liability for Discrimination,* 62 Fordham Law Review, 1835, 1847 (1994); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1319 (2d Cir.1995) (Parker, J., dissenting). Accordingly, *Miller's* construction leaves no subject upon which the statutory language might operate, i.e., it makes it surplus.

Moreover, and more importantly, the holding frustrates the declared purpose of the statute and the recent amendments making compensatory and punitive damages available to prevailing plaintiffs. Title VII incorporates a congressional declaration of a "national policy of nondiscrimination." *See* 110 Cong.Rec. 13, 169 (1964). In contrast to equitable remedies such as reinstatement and back pay, which are typically imposed on employers, compensatory and punitive damages are typically imposed upon the perpetrators of wrongful conduct and not necessarily on those whose liability is merely derivative. *See, e.g., Meritor Savings Bank v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986) (plaintiff's co-worker's sexually harassing conduct not automatically ascribed to employer); *cf. Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172, 1180 (S.D.N.Y.1992) ("Since such damages [compensatory and punitive damages] are of type that an individual can be expected to pay, [there is] little reason" to hold harmless individual defendants sued in their individual capacities); *see also Miller,* 991 F.2d at 589 (Fletcher, J., dissenting). The purpose of imposing punitive damages in particular is to punish the wrongdoer and deter others. Holding individuals harmless for their own conduct, while imposing vicarious liability upon the organizations that employ those individuals, clearly frustrates at least one and probably both of the statute's purposes. *See Hamilton v. Rodgers,* 791 F.2d 439, 443 (5th Cir.1986) (refusing to hold perpetrators liable "encourage[s] supervisory personnel to believe that they may violate Title VII with impunity.").

It is no answer to say, as *Miller* does, *see* 991 F.2d at 588, that employer liability will sufficiently motivate them so as to disabuse their supervisors of the notion that discrimination has no personal consequences. If employers have no advance notice of their supervisors' conduct, their response must be after the fact, thus frustrating the statutory purpose of preventing the discriminatory conduct.[7]

In any event, under *Miller's* construction the perpetrators escape any consequences under the statute for their own conduct. In contrast to *Miller's* speculation concerning employer motivation, imposing liability on the perpetrators of prohibited conduct creates a direct way of discouraging discriminatory conduct. *See Iacampo v. Hasbro, Inc.,* 929 F.Supp. 562, 572 (D.R.I.1996) ("[T]hreatening supervisory employees with individual liability under Title VII and the ADA deters those who would use their positions and power to discriminate, and guarantees that victims of discrimination will receive redress . . . from their very present oppressors.").

Given the plain terms of the statute, the absence of legislative history to support the conclusion of the *Miller* court, and its frustration of legislative purpose, the decision seems to rest on nothing more than a policy determination that since supervisors are or-

---

7. Obviously, if employers are aware of the conduct and have not acted upon it, *Miller's* assumption also fails.

dinarily less able than "employers" to bear the burdens of litigation, they should not be held liable for their own discriminatory conduct under Title VII. But when "Congress' intent is ... plain ... policy arguments ... must be addressed to the body that has the authority to amend the legislation, rather than one whose authority is limited to interpreting it." *Laborers Health and Welfare Trust Fund for No. Cal. v. Advanced Lightweight Concrete Co., Inc,* 484 U.S. 539, 551, 108 S.Ct. 830, 837, 98 L.Ed.2d 936 (1988).

■ For all the above reasons, this court is convinced that *Miller* was wrongly decided, and I can only hope that an *en banc* court corrects the error. Nonetheless, as I have previously explained, "[h]aving noted my disagreement with both the principle and its rationale, it goes without saying that this court is bound by the Circuit's ruling and must apply it." *Coleman v. Wilson,* 912 F.Supp. 1282, 1299 n. 11 (E.D.Cal.1995), *appeal dismissed,* 101 F.3d 705 (9th Cir.1996). Accordingly, constrained by the Circuit's holding in *Miller* and the fact that § 12112(a) tracks the language of 42 U.S.C. § 2000e, the court will not grant plaintiff leave to sue the individual defendants for their alleged violation of his rights under 42 U.S.C. § 12112(a).

## B. 42 U.S.C. § 12203

Plaintiff's retaliatory discharge claim presents a different question. Neither the Supreme Court nor the Ninth Circuit has addressed the question of individual liability under § 12203.[8] As there is no binding precedent, the issue becomes a matter of statutory construction, the purpose of which is to determine and effectuate Congress' intent. *Foxgord v. Hischemoeller,* 820 F.2d 1030, 1032 (9th Cir.1987) (citing *United States v. Taylor,* 802 F.2d 1108, 1113 (9th Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987)), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 502 (1987).

■ The process of determining congressional intent begins with the language of the statute itself. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 172–74, 114 S.Ct. 1439, 1446, 128 L.Ed.2d 119 (1994). Unlike § 12112 which refers to the liability of an "employer," the retaliation provision directs that "no person shall discriminate against any individual...." *See* note 4, *supra* (emphasis added). Since the plain meaning of "person" includes individuals, and since I "must presume that a legislature says in a statute what it means and means in a statute what it says there," *Connecticut National Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992), it follows that plaintiff may sue the individual defendants under the anti-retaliation provision of the ADA. That, however, does not conclude the analysis.

■ Because plaintiff seeks general damages, the court must also determine whether the retaliation provisions of the statute permit their recovery. The statute, in addressing procedures and remedies, commences by referring to other statutes, *see* 42 U.S.C. § 12203; those statutes in turn refer to other statutes, which in turn refer to yet other statutes. Without replicating in detail the veritable labyrinth that must be traced in an effort to determine what remedies are available, it appears that this referral and re-referral process leads to only two statutes addressing remedies, 42 U.S.C. §§ 2000e–5(g) and 2000a–3(a), both providing only equitable relief.[9] Nonetheless, as I now explain, it also appears to the court that Congress has provided for the recovery of both general and punitive damages for a willful violation of the anti-retaliation provisions of the ADA.

The statute extends to aggrieved plaintiffs the remedies available pursuant to sections

---

**8.** As far as the court can determine, no other circuit court has directly confronted the issue either.

**9.** Without complete confidence that the following list encompasses all of the statutes referred to, and all the permutations to be followed, the court believes that the following statutes are implicated: 42 U.S.C. §§ 12203, 12111, 12117, 2000–4, 5, 6, 8, 9, 12131, 12133, 2000e–16, 5(f)(e), 12181, 12188, 2000a–3(a) and 29 U.S.C. § 794a.

107, 203 and 308 of the Act. 42 U.S.C. § 12203(c); *see* note 4, *supra.* In turn, Congress has provided that "[i]n an action brought by a complaining party under the powers, remedies and procedures set forth in § 716 or 717 of the Civil Rights Act of 1964 (as provided in section 107(a) of the Americans with Disabilities Act of 1990) against a respondent who engaged in unlawful intentional discrimination ... the complaining party may recover compensatory and punitive damages...." 42 U.S.C. § 1981a(2). In turn, "complaining party" is defined by the Civil Rights Act of 1991 to include persons who bring actions under Title I of the Americans with Disabilities Act, *see* 42 U.S.C. § 1981a(d)(1)(B), and thus would appear to include suits charging retaliation.[10]

The above statutory analysis, as complex and circular as any this court has previously encountered, suggests that plaintiff may seek full recovery. This conclusion is buttressed by the established principle that "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946). As the Supreme Court has recently explained, where Congress provides a cause of action, a federal court must "presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise." *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 66, 112 S.Ct. 1028, 1032, 117 L.Ed.2d 208 (1992). Indeed, *Franklin* has led one district court to conclude that general damages are available under the ADA's antiretaliation provisions. *See Niece v. Fitzner,* 922 F.Supp. 1208, 1219 (E.D.Mich.1996).[11] For all the above reasons, the court determines that plaintiff here can seek general damages under the retaliation provision of the ADA.

## III.

## CONCLUSION

For the above reasons, the court concludes that plaintiff's suit against the individuals whom he alleges discriminated against him by virtue of his disability must be dismissed without leave to amend, but that he may maintain a suit against them for, *inter alia,* punitive and compensatory damages allegedly suffered by virtue of their retaliation against him because he complained of their discrimination. This dissonant result flows inexorably from the Circuit's failure in *Miller* to carefully attend to the language the Congress employed in Title VII and the necessary application of that holding to the parallel language in the Americans with Disabilities Act.

IT IS SO ORDERED.

---

**10.** While the retaliation provision, 42 U.S.C. § 12203, appears in Title IV of the ADA, it specifically provides that retaliation in the employment context constitutes a violation with respect to Title I for purposes of the remedies available. *See* note 4, *supra.*

**11.** *Niece* notes that the court in *Franklin* found general damages available under Title IX of the

Civil Rights Act, recognizing the availability of general damages under Title VI, and by an extension of reasoning to § 504 of the Rehabilitation Act. The court then concludes "[c]onsequently compensatory damages are available to plaintiffs asserting claims under 42 U.S.C. §§ 12132 and 12203." *Niece v. Fitzner,* 922 F.Supp. 1208, 1219 (E.D.Mich.1996).