Jeffrey VAN HULLE, Plaintiff,

v.

PACIFIC TELESIS CORP., a.k.a Pacific Bell Corporation, Cigna Healthcare of California, Prudential Healthcare, and Does 1 through X, inclusive, Defendants.

No. 00–20331.

United States District Court,
N.D. California,
San Jose Division.

Dec. 8, 2000.

Robert E. Nuddleman, Phillip J. Griego & Associates, San Jose, CA, for plaintiff.

Anne E. Libben, Pacific Telesis Group, San Francisco, CA, for defendants.

## ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

FOGEL, District Judge.

Defendant Cigna Healthcare of California ("Cigna") moves for dismissal of Plaintiff's complaint. Plaintiff Jeffrey Van Hulle ("Van Hulle") opposes the motion and alternatively asks the Court for leave to amend his complaint in order to assert a cause of action under the Employment Retirement Income Securities Act ("ERISA"). The Court has read the moving and responding papers and has considered the oral arguments of counsel. For the reasons set forth below, Cigna's motion to dismiss will be granted without leave to amend as to Van Hulle's claims under the

American with Disability Act ("ADA")[1] and with leave to amend as to Van Hulle's proposed ERISA claim.

## I. BACKGROUND

The complaint asserts that Defendants Cigna, Prudential Healthcare, and Pacific Telesis violated the ADA. Van Hulle works for Pacific Telesis, which contracted with Cigna and Prudential Healthcare for administration of its employee insurance health benefits. Van Hulle alleges that Defendants administered the insurance policy in a discriminatory manner by refusing him services and treating him differently because of his disability. Specifically, the complaint alleges, *inter alia*, that Cigna repeatedly delayed paying Van Hulle's claims and otherwise denied him benefits provided by the insurance policy. Van Hulle further alleges that Defendants retaliated against him for filing a charge of discrimination against them with the Equal Employment Opportunity Commission ("EEOC"). Van Hulle now asserts two distinct theories of liability under the ADA: (1) discrimination and failure to modify policies and procedures by a place of public accommodation in violation of 42 U.S.C § 12182 ("Title III" or "Subchapter III"); and (2) retaliation in violation of 42 U.S.C. § 12203.[2] Cigna contends that the claims asserted against it should be dismissed because Cigna does not fall within the ambit of the ADA as an "employer" under Subchapter I or as "a place of public accommodation" under Subchapter III.[3]

## II. LEGAL STANDARD

■ Generally, the issue to be decided on a motion to dismiss is not whether a plaintiff's claims have merit but whether the moving defendant has shown beyond doubt that the plaintiff can prove no set of facts entitling him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court's review is limited to the face of the complaint, documents referenced by the complaint and matters of which the court may take judicial notice. *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir.1991); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n. 4 (9th Cir.1996); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986). Ordinarily, a complaint may be dismissed as a matter of law for only two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984) (*citing* 2A J. Moore, *Moore's Fed. Practice* ¶ 12.08 at 2271 (2d ed.1982)). When a court considers a motion to dismiss, all allegations of the complaint are construed in the plaintiff's favor. *Sun Savings & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir.1987). For a motion to dismiss to be granted, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved. *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987).

## III. DISCUSSION

■ The dispositive question before the Court is whether Cigna is subject to either Subchapter III or Section 12203 ("retaliation provision") of the ADA.[4] Because

---

1. 42 U.S.C. § 12101, et seq.

2. The ADA initially was enacted as Public Law 101–336 and was organized into Titles I through V. When the ADA was codified as 42 U.S.C. § 12101, et seq., the "Titles" were relabeled as "Subchapters." Titles I, II, and III became Subchapters I, II, and III, respectively, and Title V became Subchapter IV.

3. Hereinafter, unless otherwise indicated, all statutory references are to the ADA.

4. Cigna also argues that Subchapter I of the ADA does not apply to it because it is not being sued as an "employer." Van Hulle clearly does not have a viable Subchapter I claim against Cigna because Cigna is not a "covered entity." *See, Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1113 (9th Cir.2000). "Subchapter I defines a covered entity as an employer, employment agency, labor organization, or joint labor-management committee." *Id.* at 1113 (*internal quotations omitted* );42 U.S.C. § 12111(2).

these statutory provisions arguably have different application, the Court will address them separately.

## A. Subchapter III

Subchapter III of the ADA expressly provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The threshold issue is whether an insurance provider such as Cigna is a place of public accommodation within the meaning of Subchapter III. The Ninth Circuit addressed precisely this issue in *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir.2000).

In *Weyer*, an employee alleged, *inter alia*, that the employer-provided insurance carrier violated Subchapter III of the ADA because it provided greater benefits for persons with physical disabilities than for persons with mental disabilities. *Id.* The court agreed with the plaintiff that an insurance office is a public accommodation as expressly set forth in § 12181(7), but also concluded that the term "place of public accommodation" requires a "connection between the good or service complained of and an actual physical place." *Id.* at 1114 (*citation omitted* ).[5] The court thus went on to hold that the benefit plan itself is not a good or service offered by a place of public accommodation, *Id.* at 1115 (*citing, Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006, 1010 (6th Cir.1997) (en banc)), and that therefore an insurance company in its capacity as administrator of an employer-provided insurance plan is not a "place of public accommodation" within the meaning of Subchapter III. *Id.* [*citing, Parker*, 121 F.3d at 1010 ("A benefit plan offered by an employer is not a good of-

fered by a place of public accommodation."); *Ford v. Schering–Plough Corp.*, 145 F.3d 601 (3rd Cir.1998) (same) ]; *see also, Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042 (9th Cir.2000).

■ Based on the facts alleged here, Ninth Circuit precedent clearly precludes Van Hulle's Subchapter III claim against Cigna. The relationship between Van Hulle and Cigna came about only because Van Hulle's employer, Pacific Telesis, contracted with Cigna for the provision of health insurance benefits to Pacific Telesis employees. In its capacity as an employer-provided insurance carrier, Cigna is not a "place of public accommodation" under Subchapter III. Accordingly, Van Hulle's Subchapter III claim against Cigna will be dismissed without leave to amend.

## B. 42 U.S.C. § 12203

The ADA prohibits discrimination in three areas: employment ("Subchapter I"); public services ("Subchapter II"); and public accommodations ("Subchapter III"). Subchapter IV sets forth miscellaneous provisions, some of which apply to each of the proceeding subchapters. *See, e.g.*, 42 U.S.C. §§ 12202, 12205, 12203. The retaliation provision appears in this "miscellaneous" subchapter and provides, in relevant part, as follows:

> No **person** shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this Act.

(42 U.S.C. § 12203(a) (*emphasis added* ).) The retaliation provision also outlines the remedies available to a claimant alleging retaliation by referring the claimant to the remedial sections of the appropriate subchapter:

---

**5.** For example, a plaintiff might allege that the design of the insurer's office makes the office inaccessible to individuals with physical impairments. No such allegation appears in Van Hulle's complaint.

The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II, and subchapter III of this chapter, **respectively.**

(42 U.S.C. § 12203(c) (*emphasis added*).)

The threshold issue here is whether the retaliation provision's explicit reference to Subchapters I, II, and III, operates to limit retaliatory liability to entities which are otherwise liable under these subchapters. Van Hulle asserts that the "plain language" of the retaliation provision, § 12203, expressly extends liability for retaliation to *any* "person," including persons or entities not otherwise liable under the ADA. *See, Ostrach v. Regents of the University of California,* 957 F.Supp. 196 (E.D.Cal.1997) ("Since the plain meaning of 'person' includes individuals … it follows that plaintiff may sue the individual defendants under the anti-retaliation provision of the ADA."); *but see, Stern v. California State Archives,* 982 F.Supp. 690 (E.D.Cal.1997) ("The significance *Ostrach* places on the word 'person' overlooks the structure of the ADA."). According to Van Hulle, unlike Subchapters I, II and III of the ADA, the reach of Section 12203 is not limited to *covered entities* (i.e., "employers," "public entities," or "places of public accommodations"). Cigna, on the other hand, asserts that only covered entities are liable under the retaliation provision. While the Court of Appeals for the Ninth Circuit has not addressed this issue, other circuit courts as well as several district courts both within and outside the Ninth Circuit have dealt with analogous cases. *See, e.g., Baird v. Rose,* 192 F.3d 462 (4th Cir.1999); *Hiler v. Brown,* 177 F.3d 542 (6th Cir.1999); *Stern,* 982 F.Supp. 690; *Ostrach,* 957 F.Supp. 196; *Cable v. Department of Developmental Services,* 973 F.Supp. 937 (C.D.Cal.1997); *Kautio v. Zurich Insurance Co., et al.,* 1998 WL 164623 (D.Kan.1998).

In *Ostrach,* the plaintiff filed an ADA retaliation claim against his employer and supervisor. *Ostrach,* 957 F.Supp. 196. Compelled by the Ninth Circuit's binding precedent[6] the court held that a supervisor is not liable in his individual capacity under Subchapter I, (the employment related chapter of the ADA), because a supervisor is not an employer.[7] However, the court reasoned that "[u]nlike § 12112 which refers to the liability of an 'employer,' the retaliation provision directs that 'no person shall discriminate against any individual' " *Id.* at 200 (*citing,* 42 U.S.C. § 12203). The court therefore held that "[s]ince the plain meaning of 'person' includes individuals," and since it "must presume that a legislature says in a statute what it means and means what it says there,' it follows that plaintiff may sue the individual defendants under the anti-retaliation provision of the ADA." *Id.* (*internal citations omitted*).

However, virtually all other courts have disagreed with *Ostrach,* holding that the retaliation provision does not create individual liability in the employment context. *See, e.g., Baird,* 192 F.3d 462, *Hiler,* 177 F.3d 542; *Stern,* 982 F.Supp. 690; *Cable,* 973 F.Supp. 937; *Kautio,* 1998 WL 164623. In *Stern,* plaintiff sued her employer and individual supervisors for violation of the ADA's retaliation provision. The court held that "a careful reading of the relevant

---

6. *See, Miller v. Maxwell's Int'l., Inc.,* 991 F.2d 583 (9th Cir.1993).

7. Subchapter I, in relevant part, states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). "The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). The *Ostrach* court concluded that since § 12112(a) tracks the language of 42 U.S.C. § 2000e and since § 2000e does not extend liability to individuals that are not employers, then § 12112(a) also does not extend liability to individuals who do not otherwise satisfy the definition of an employer.

provisions in light of the ADA's overall structure makes it clear that plaintiff cannot maintain an ADA retaliation claim against individual defendants who do not otherwise satisfy the definition of employer." *Id.* at 692.

The *Stern* court reasoned that "[c]onsidering the ADA's overall framework, it makes sense that the retaliation provision broadly prohibits retaliation by a 'person,' but prescribes the available remedies according to the type of retaliation alleged." *Id.* at 694 (*see,* § 12203(c)). "[W]hich remedies a plaintiff is afforded, [if any], depends on whether the alleged retaliation occurred with respect to employment, public services, or public accommodations." *Id.* at 693. Since plaintiff complained about retaliation in employment (i.e., Subchapter I claim), the court looked to Section 12117 to determine what remedy plaintiff was afforded. (*See* text of § 12203 infra p. 5:3–9.) The court concluded that in order for a Plaintiff to be afforded a remedy against a defendant under § 12117, the defendant must meet the definition of "employer."[8] Since the defendants in that case did not meet this definition, the court concluded that they could not be held liable for retaliation in the workplace under the ADA.

■ The Court finds *Stern's* statutory analysis persuasive and applicable here. Indeed, a close reading of Section 12203(c) indicates that the remedy a retaliation claimant is afforded depends on whether the alleged retaliation occurred with respect to employment, public services or public accommodations. For instance, a claimant "who complains that a 'person' retaliated against him or her in the context of employment is referred to Section 12117," which is the remedial provision for Subchapter I. *Stern,* 982 F.Supp. at 693. In the same fashion, a claimant asserting that a "person" retaliated against him or her in the context of public services is referred to Section 12133, the remedial provision for Subchapter II. *Id.* "An aggrieved party who complains that a "person" retaliated against him or her in the context of public accommodation is referred to Section 12188," the remedial provision for Subchapter III.[9] *Id.* By contrast, Section 12203(c) provides *no* remedy for a situation in which the alleged retaliation did not occur with respect to employment, public services, or public accommodations, (as set forth in Subchapters I, II, and III of the ADA, respectively). The most reasonable inference to be drawn from the absence of a remedial provision is that Congress never intended to create a cause of action in such cases. This Court thus concludes that a plaintiff cannot maintain an ADA retaliation claim against entities which are not otherwise subject to Subchapters I, II, and III of the ADA.

Based on the foregoing, what remedies, if any, Van Hulle has "depends on whether the alleged retaliation occurred with respect to employment, public services, or public accommodations." *Id.* at 693. Although Van Hulle alleges conclusorily that the retaliation against him occurred with respect to public accommodations and employment, the Court's determinations here-

---

**8.** Since the Ninth Circuit had not yet construed the term "employer" as defined by Subchapter I of the ADA, the court relied on the its interpretation of "employer" as defined by Title VII of the Civil Rights Act of 1964. "Interpreting this definition this Circuit has unequivocally held that Title VII does not provide a remedy against individual defendants." *Stern,* 982 F.Supp. at 693 (*citations omitted*). Thus, the court concluded that since § 12117 incorporates the remedial provisions of Title VII and contains the same definition of "employer" as the ADA, *Cf.,* 42 U.S.C. § 2000e(b); and 42 U.S.C.

§ 12111(5)(A), "individuals who do not qualify as 'employers' under Title VII cannot be held liable for workplace retaliation in violation of the ADA." *Id.* at 694.

**9.** Each remedial section of each subchapter, in turn, refers to remedies already provided in existing civil rights statutes. Section 12188, for instance, incorporates the remedies and procedures set forth in 42 U.S.C. § 2000a–3(a) (Subchapter II of the Civil Rights Act of 1964).

in that Cigna is not a covered entity under Subchapter I and II preclude Van Hulle from asserting a retaliation claim against Cigna on either of these grounds.[10] Accordingly, Van Hulle's retaliation claim against Cigna also will be dismissed without leave to amend.

### C. ERISA Claim and Leave to Amend

The Court in its discretion will grant Plaintiff leave to amend so that he may attempt to allege a cause of action under the Employment Retirement Income Securities Act ("ERISA") (29 U.S.C. § 1001, *et seq.*).

### IV. ORDER

IT IS HEREBY ORDERED that Cigna's motion to dismiss the ADA claims alleged against it be GRANTED. Van Hulle shall have thirty (30) days within which to amend his complaint to assert an ERISA claim.

---

**10.** *See, Weyer,* 198 F.3d 1104; *Chabner,* 225 F.3d 1042.