Clifford W. JOHNSON, Plaintiff,

v.

ED BOZARTH # 1 PARK MEADOWS CHEVROLET, INC., a Delaware corporation, Defendants.

No. CIV. 02–B–1080CBS.

United States District Court,
D. Colorado.

Jan. 14, 2004.

Jeffrey B. Klaus, Deisch, Marion, P.C., Denver, CO, for Plaintiff.

Meghan W. Martinez, Brownstein, Hyatt & Farber, P.C., Denver, CO, Bret Matthew Heidemann, Michael Gerard Bohn, Campbell, Bohn, Killin, Brittan & Ray, L.L.C., Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiff Clifford W. Johnson brings one remaining claim under the Americans with Disabilities Act (ADA) for retaliatory failure to hire against Defendant Ed Bozarth # 1 Park Meadows Chevrolet, Inc. A jury trial is set for February 2, 2004. Defendant moves *in limine* to preclude Plaintiff from introducing evidence relative to compensatory and punitive damages, and to strike Plaintiff's jury demand. For the following reasons, I grant the motion.

## I. Background

The following facts are uncontested unless otherwise noted. Plaintiff Clifford Johnson is a car salesman who was employed by Jerry Roth Chevrolet from November 1998 until approximately August 27, 2001. Prior to that employment, from 1992 to 1996, Johnson worked at Ed Bozarth Chevrolet Company. While employed at Bozarth Chevrolet, Johnson was diagnosed with lung cancer and underwent extensive surgery. He was later terminated from that job.

In response, Johnson filed an EEOC complaint alleging that he was dismissed because of his illness. He contended that Ed Bozarth, as president of Bozarth Chevrolet, personally made the decision to terminate his employment. Johnson later brought suit in this Court against Bozarth Chevrolet alleging a violation of the Americans with Disabilities Act (ADA). His lawsuit settled for $30,000 in November 1997.

Approximately one year after resolution of his suit against Bozarth Chevrolet, Johnson went to work for Jerry Roth, a dealership located near the Park Meadows Mall. Johnson remained an employee there until late August, 2001. At that time, Jerry Roth effectuated an asset sale agreement with General Motors Corporation and Ed Bozarth #1 Park Meadow, Inc. (Bozarth Park Meadow). Bozarth Park Meadow is a corporation that was formed in August 2001 for the sole purpose of acquiring Jerry Roth's assets. Under the terms of the transaction, General Motors purchased Jerry Roth's assets and then assigned purchase rights to Bozarth Park Meadow. One express provision provided that General Motors and Bozarth Park Meadow assumed no liabilities for Jerry Roth employees.

On August 27, 2001, several days before the transaction closed, Jerry Roth's management team and Ed Bozarth held a meeting with Jerry Roth employees to announce the change in ownership and notify them that they would all lose their jobs. Ed Bozarth also informed the Jerry Roth employees that if they wanted a job at the newly forming Bozarth Park Meadow, they should enter an application for employment. Johnson did not attend the meeting because he did not work that day. Of the 103 employees at Jerry Roth, Bozarth Chevrolet asserts, 45 were eventually hired by Bozarth.

Johnson alleges that during the August 27 meeting, an employee questioned Ed Bozarth about Saturday lunches for sales employees. The question included a reference to Johnson. Mr. Bozarth allegedly responded, "Cliff Johnson doesn't work for this organization and he will never work here." Mr. Johnson asserts that several people telephoned him later that day to report Mr. Bozarth's statement to him. Mr. Bozarth denies making the statement. Johnson asserts that after hearing of Mr. Bozarth's comments he decided not to apply for a position with Bozarth Park Meadow. This suit followed.

## II. Discussion

As a threshold matter, Defendant properly brings its motion *in limine* to preclude the damages evidence. Plaintiff argues that the motion is effectively a dispositive motion to dismiss because granting it would result in dismissal of the portion of his claim in which he requests damages. He contends the motion is untimely. I disagree. The Final Pretrial Order of September 8, 2003, p. 13, reads: "Defendants plan to make the necessary motions to keep the issues ... tailored to Plaintiff's sole remaining cause of action." Under the circumstances, concern for avoiding resource waste and maximizing judicial efficiency

weighs in favor of deciding the issue now.

The anti-retaliation provision of the ADA states:

(a) Retaliation

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

(c) Remedies and procedures

*The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively.*

42 U.S.C. § 12203 (emphasis added).

Plaintiff seeks compensatory and punitive damages for Defendant's alleged violation of the ADA's retaliation provision, 42 U.S.C. § 12203. The Tenth Circuit has not addressed whether § 12203 provides for compensatory or punitive damages. Other circuits have addressed § 12203 remedies in the public-services context, but not in regard to private employment retaliation. Nonetheless, one district court in the Tenth Circuit, the District of Kansas, has opined at length on the issue.

In 2001 the Kansas court ruled that: "an analysis of § 12203 and the remedies associated with it reveals that Congress did not provide for compensatory and punitive damages for violations such as the one alleged by Plaintiff [employment retaliation]." *Boe v. AlliedSignal, Inc.,* 131 F.Supp.2d 1197, 1202 (D.Kan.2001); *accord Sink v. Wal–Mart Stores, Inc.,* 147 F.Supp.2d 1085 (D.Kan.2001). *Boe,* while not binding precedent, is similar to the case here. It bears quoting at length:

> The court has found only two other federal courts which have undertaken such analysis. The United States District Court for the Western District of Missouri, in *Brown v. City of Lee's Summit, Mo.,* 1999 WL 827768 (W.D.Mo.1999), concluded that no compensatory or punitive damages are available for a plaintiff alleging employment retaliation under the ADA. The other court, the United States District Court for the Eastern District of California, in *Ostrach v. Regents of the Univ. of California,* 957 F.Supp. 196 (E.D.Cal.1997), reached the opposite conclusion. This court agrees with the Western District of Missouri, and concludes that Defendants are entitled to summary judgment on Plaintiff's claim for retaliation under the ADA, to the extent it requests compensatory and punitive damages. The following analysis supports this conclusion.

> The ADA includes four primary subchapters. The first three sub-chapters contain remedial provisions. Sub-chapter I (42 U.S.C. §§ 12111 to 12117) relates to employment and contains the remedial provisions for employment cases. The fourth sub-chapter contains miscellaneous provisions, including 42 U.S.C. § 12203, the prohibition on retaliation at issue in this case. The fourth

sub-chapter does not have its own remedial provisions. It effectively 'borrows' remedies from the first three sub-chapters, depending on what type of retaliation case is at issue. For example, if the case is an employment retaliation case (as is the instant case), the remedial provisions of sub-chapter I, specifically § 12117, are used.

In this case, then, the court must look to 42 U.S.C. § 12117 to determine the remedy available to Plaintiff. Section 12117 adopts the remedies set forth in 42 U.S.C. § 2000e–5 (Title VII of the Civil Rights Act of 1964). [Citing 42 U.S.C. § 12117.] Section 2000e–5, in turn, does not provide for compensatory or punitive damages. The Civil Rights Act of 1991, however, provides that damages are available in the following cases:

> [i]n an action brought by a complaining party under the powers, remedies, and procedures set forth in ... [42 U.S.C. §§ 2000e–5 or 2000e–16] (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12117(a)), and section 794a(a)(1) of Title 29, respectively) against a respondent ... who violated ... section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12112), or committed a violation of section 102(b)(5) of the Act [42 U.S.C. § 12112(b)(5) ], against an individual.... [Citing 42 U.S.C. § 1981a(a)(2).]

The statutory language indicates that compensatory and punitive damages are available for violations of §§ 12112 and 12112(b)(5). The statute makes no mention of § 12203. Because the provision does not mention § 12203, the court must conclude that Congress did not intend to provide for compensatory and punitive damages for retaliation claims under § 12203.

As noted above, the United States District Court for the Western District of Missouri came to the same conclusion in *Brown v. City of Lee's Summit, Mo.* In *Brown*, Judge Gaitan worked through the statutory analysis, and also concluded that compensatory and punitive damages are not available in an employment retaliation case under the ADA. In addition to the relevant statutory language noted above, Judge Gaitan cited the legislative history of the ADA to support his conclusion. [Citing *Brown*, 1999 WL 827768, at 2.] Judge Gaitan rejected the reasoning in *Ostrach v. Regents of the Univ. of California*, where the Eastern District of California held that compensatory and punitive damages are available. [*Citing id.* at 3–4, 8. Judge Gaitan wrote: "a meticulous tracing of language of this tangle of interrelated statutes reveals no valid basis for plaintiff's claim of compensatory and punitive damages in his ADA retaliation claim."] This court does the same. The court concludes that Plaintiff is entitled only to equitable relief on his ADA employment retaliation claim and is not entitled to compensatory or punitive damages.

*Id.* This interpretation is both instructive and persuasive. In sum, because this is an employment-retaliation case, I look from ADA § 12203(c) to ADA sub-chapter 1, the employment sub-section, in which I find remedial provision § 12117. Section 12117 leads me to Title VII remedies set forth in 42 U.S.C. § 2000e–5, which does not provide for compensatory or punitive damages. Consequently, § 1981a(a)(2) provides clearly that damages are available under § 2000e–5 for violations of ADA sections 12112 and 12112(b)(5), but not for retaliation under § 12203.

Employing logical analysis parallel to the District of Kansas' reasoning in *Boe*, the U.S. Supreme Court and the Eleventh

Circuit have navigated the remedies path from § 12203 to Title VI when public-services retaliation-rather than private-sector employment retaliation-was at issue. "[A] person injured by retaliation in the public services context must look to § 12133 for available remedies. Section 12133, in turn, makes '[t]he remedies, procedures, and rights set forth in section 794a of Title 29 (the Rehabilitation Act Amendments of 1992) ... the remedies, procedures, and rights this sub-chapter provides to any person alleging discrimination on the basis of disability.' Section 794a incorporates the 'remedies, procedures, and rights set forth' in Title VII ..., as well as the 'remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964.' ... For a violation of § 12203 in the context of public services, then, we ultimately look to Title VI for the remedies available." *Shotz v. City of Plantation,* 344 F.3d 1161, 1169 (11th Cir. 2003). *See also, Barnes v. Gorman,* 536 U.S. 181, 185, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002) ("[T]he remedies for violations of § 202 of the ADA and § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI."). These cases buttress the reasoning in *Boe.*

Plaintiff contends *Boe*'s formulation of section 12203 remedies is too restrictive. He points first to *Ostrach v. Regents of University of California,* 957 F.Supp. 196 (E.D.Cal.1997), in which the Eastern District of California ruled that compensatory and punitive damages are available to victims of employment retaliation under ADA § 12203. There, the court explicitly rejected what it described as arriving at mere equitable remedies through a "veritable labyrinth" of statutory provisions. *Id.* at 200. Negotiating its own maze of legislative discourse, it ruled that "Congress has provided for the recovery of both general and punitive damages for a

willful violation of the anti-retaliation provisions of the ADA." *Id.*

Again, given the complexity of the argument, it is worth quoting the *Ostrach* court verbatim:

The statute extends to aggrieved plaintiffs the remedies available pursuant to sections 107, 203 and 308 of the Act. [Citing 42 U.S.C. § 12203(c).] In turn, Congress has provided that '[i]n an action brought by a complaining party under the powers, remedies and procedures set forth in § 716 or 717 of the Civil Rights Act of 1964 (as provided in section 107(a) of the Americans with Disabilities Act of 1990) against a respondent who engaged in unlawful intentional discrimination ... the complaining party may recover compensatory and punitive damages....' [Citing 42 U.S.C. § 1981a(a)(2).] In turn, 'complaining party' is defined by the Civil Rights Act of 1991 to include persons who bring actions under Title I of the Americans with Disabilities Act, ... and thus would appear to include suits charging retaliation.

The above statutory analysis, as complex and circular as any this court has previously encountered, suggests that plaintiff may seek full recovery. This conclusion is buttressed by the established principle that 'where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.' [Citing *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946).] As the Supreme Court has recently explained, where Congress provides a cause of action, a federal court must 'presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise.' [Citing *Franklin v. Gwinnett County Pub.*

*Schs.,* 503 U.S. 60, 66, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). *See also, Niece v. Fitzner,* 922 F.Supp. 1208, 1219 (E.D.Mich.1996).]

*Ostrach,* 957 F.Supp. at 200.

The *Boe* court rejected this reasoning. Plaintiff now argues without pertinent citation that I am required to assess the ADA as a whole, and from that perspective, attribute the remedies that apply to other sections of the law to section 12203. First, Plaintiff contends that because the term "discrimination" is used in § 12203(a) and is defined in § 12112(b), the language "must be given its plain meaning and full import within the statutory scheme." He then argues that the practices outlawed by § 12203(a) are set forth only in § 12112(b). He then leaps to the conclusion that § 12203 is "included within such discrimination and must be afforded all the remedies available to any other unlawful employment practice or unlawful discrimination, or unlawful retaliation within the statutory scheme." I disagree. Congress often uses nuance and detail to customize sections within a statute so each embodies unique characteristics. It has done so here.

Second, again without pertinent citation, Plaintiff argues that because the Rehabilitation Act, 29 U.S.C. § 791(g), adopts some standards also found in the ADA, then 42 U.S.C. § 1981a(a)(2)-which provides remedies for victims under the Rehabilitation Act-should also apply to the ADA. This logic is unfounded. Third, he posits that "it is plausible that Congress intended [ADA sub-chapters 1, 2, and 3] to be considered cumulatively and that all of the remedies under any of the three sections [listed in § 12203] (§§ 12117, 12133, and 12188) are available for any retaliation under [any of the sub-chapters]." He fails to cite any legislative history or anything else in support of this contention. Indeed, it flies in the face of the explicit statutory language of § 12203: *"with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively."* Finally, Plaintiff contends that because the Rehabilitation Act and the ADA cross-reference each other, and because there is a "spirit of the comprehensive statutory scheme embodied in the employment civil-rights statutes," the remedies provided under § 1981a(a)(2) "can override what appears to be an express statutory provision." Again I disagree. I cannot, as the *Ostrach* court attempted to do, legislate where Congress has not.

ACCORDINGLY, it is ORDERED THAT:

1) DEFENDANT's motion *in limine* is GRANTED. PLAINTIFF MAY NOT offer evidence of compensatory or punitive damages at trial; and

2) The jury trial, set for February 2, 2004, is CONVERTED to a trial to the Court.