## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,

v.

## PUGET SOUND LOG SCALING AND GRADING BUREAU, and Northwest Log Scalers Association, Defendants-Appellees.

Nos. 84-3767, 3807.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 1984.

Decided Jan. 29, 1985.

Justine Lisser, E.E.O.C., Washington, D.C., for plaintiff-appellant.

Mary E. Drobka, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for defendants-appellees.

Before BROWNING, Chief Judge, and GOODWIN and SKOPIL, Circuit Judges.

GOODWIN, Circuit Judge.

In this enforcement action EEOC appeals from an adverse partial summary judgment which disposed of the one claim not covered by stipulation.

Until 1979, the health insurance policy which Puget Sound offered its employees did not provide full coverage for pregnancy-related expenses of female employees or spouses of male employees. Following passage in 1978 of the Pregnancy Discrimination Act (PDA), 42 U.S.C. 2000e(k) (1982)[1], Puget Sound amended its health policy to cover the pregnancy-related expenses of female employees, but continued to exclude those of spouses of male employees. In January 1982, a male employee and the employees' union filed a discrimination complaint with the EEOC alleging that the policy, as amended, discriminated against male employees by providing them with less comprehensive health insurance benefits than it provided to female employees and their spouses. In September 1983, EEOC brought an action in federal district court on behalf of Puget Sound's male employees whose spouses had incurred non-covered pregnancy-related expenses which would have been covered if incurred by female employees.

The substantive question in that action had been decided several months earlier in *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983). In *Newport News* the Supreme Court held that Congress had clearly intended the PDA to extend to benefit packages, 103 S.Ct. at 2630, and that any insurance policy which limits the coverage available to pregnant spouses of employees but not to pregnant employees discriminates against male employees on the basis of sex. *Id.* at 2631–32. On the day that *Newport News* was decided, Puget Sound amended its policies to provide full coverage for pregnant spouses of employees. The only question before us is wheth-

---

1. 42 U.S.C. § 2000e(k), says in pertinent part:
   The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e–2(h) of this title shall be interpreted to permit otherwise.…

er *Newport News* should be given retroactive effect to 1978 (the date of passage of the Pregnancy Discrimination Act).

Resolution of this question calls for application of the factors set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), for gauging the appropriateness of retroactivity.

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that "[a court] must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." ... Finally ... the inequity imposed by retroactive application [must be weighed]....

*Id.* (citations omitted).

Retroactivity is not justified under the first *Chevron* factor if Puget Sound can reasonably claim that it could not predict *Newport News.* However, a number of signals were available to Puget Sound which render implausible its current claim that it did not expect that the PDA extended coverage to pregnant spouses of employees.

In 1979, the EEOC issued guidelines in question and answer form warning employers that EEOC considered the PDA to require insurance plans to extend coverage to pregnant spouses of employees. 44 Fed. Reg. 23804, 23807–08 (April 20, 1979). Puget Sound could predict that those guidelines of the enforcing agency would be given deference by the courts, *Griggs v. Duke Power Co.,* 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971), unless they could "be said not to be a reasoned and supportable interpretation of the [applicable statute]." *Whirlpool Corp. v. Marshall,* 445 U.S. 1, 11, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980).

While the weight of the guidelines could not immediately be assessed according to their own consistency over a period of time, as has been required, *see, e.g., Dothard v. Rawlinson,* 433 U.S. 321, 334 n. 19, 97 S.Ct. 2720, 2729 n. 19, 53 L.Ed.2d 786 (1977); *General Electric Co. v. Gilbert,* 429 U.S. 125, 142, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976), they were consistent with prior EEOC guidelines and rulings under Title VII on the unlawfulness of providing different insurance coverage for spouses of male and female employees. *See, e.g.,* 29 C.F.R. § 1604.9(d) (1973); 1970 EEOC Dec. (CCH) ¶ 6114 (unlawful to provide death benefits for wives of male employees but not for husbands of female employees), ¶ 6132 (unlawful to provide insurance coverage for wives of male employees but not for husbands of female employees), ¶ 6133 (same), ¶ 6197 (same). *See also Newport News,* 103 S.Ct. at 2630, n. 22. These earlier EEOC policies should have served as a warning to Puget Sound and other employers, especially in light of the legislative advice that "[p]regnancy-based distinctions will be subject to the same scrutiny on the same terms as other acts of sex discrimination proscribed in the existing statute." *See* 1978 U.S.Code Cong. & Ad.News at 4749, 4752.

Moreover, even before passage of the Pregnancy Discrimination Act and the related EEOC guidelines, the Supreme Court had held several times in the equal protection context that less favorable provision of benefits to spouses of female employees constituted sex discrimination not only against the spouses but against the employees. *Califano v. Goldfarb,* 430 U.S. 199, 208–09, 97 S.Ct. 1021, 1027–28, 51 L.Ed.2d 270 (1977); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 645, 95 S.Ct. 1225, 1231, 43 L.Ed.2d 514 (1975); *Frontiero v. Richardson,* 411 U.S. 677, 688, 93 S.Ct. 1764, 1771, 36 L.Ed.2d 583 (1973). The Court reiterated that rule in 1980. *Wengler v. Druggists Mutual Ins. Co.,* 446 U.S. 142, 147–49, 100 S.Ct. 1540, 1543–45, 64 L.Ed.2d 107 (1980). *See Newport News,* 103 S.Ct. at 2630 n. 22. The analogous holdings in

those cases closely presage the *Newport News* decision.

Between 1979 and 1983, at least two federal courts, including this one, ruled that the PDA did not extend to coverage for nonemployees. *EEOC v. Lockheed Missiles & Space Co.*, 27 FEP Cases 1209, 1210 (N.D.Cal.1981), *aff'd*, 680 F.2d 1243 (9th Cir.1982), *vacated*, —— U.S. ——, 103 S.Ct. 3530, 77 L.Ed.2d 1383, *remanded for reconsideration in light of Newport News*, 710 F.2d 566 (9th Cir.1983); *EEOC v. Emerson Electric Co.*, 539 F.Supp. 153, 158 (E.D.Mo.1982). At least two other federal courts reached the opposite conclusion. *United Teachers—Los Angeles v. Board of Education*, 31 FEP Cases 943 (C.D.Cal. 1982), *aff'd in light of Newport News*, 712 F.2d 1349 (9th Cir.1983); *Newport News Shipbuilding and Dry Dock Co. v. EEOC*, 510 F.Supp. 66 (E.D.Va.1981), *reversed and remanded*, 667 F.2d 448 (4th Cir.1982), *aff'd*, 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983).

The holdings which supported the Puget Sound policy limitations lent substance to the possibility that Puget Sound's interpretation of the PDA would prove to be correct. But those were not holdings in a vacuum. The earliest, decided in 1981, followed the EEOC guidelines on the PDA by two years. The 1981 case might therefore have justified Puget Sound in deciding in 1981 that the guidelines were incorrect; it does not vindicate Puget Sound's ignoring the guidelines in the first place.

We do not except from this reasoning our own decision on July 6, 1982, in *Lockheed Missiles*, 680 F.2d at 1247. *Lockheed* followed by six months a contrary conclusion by the Fourth Circuit on January 7, 1982, in *Newport News*, 667 F.2d at 449, and was followed in five months by the Supreme Court grant of certiorari on December 6, 1982, in *Newport News*, 459 U.S. 1069, 103 S.Ct. 487, 74 L.Ed.2d 630. This chronology provided Puget Sound, some four years after passage of the PDA, with less than half a year in which, at its most optimistic, it could have been confident that the law in this circuit was favorable and would remain that way. In view of the state of the law nationwide during the same period, the short-lived precedential value of *Lockheed* does not alter our conclusion today that in *Newport News* the Supreme Court settled a close dispute rather than establishing a new principle of law.

In spite of the EEOC guidelines on the PDA, related EEOC rulings on Title VII questions, analogous equal protection holdings by the Supreme Court and litigation over the application of the PDA to nonemployees, Puget Sound maintains that the first *Chevron* factor will not allow retroactivity here. We do not agree. We cannot say that the *Newport News* decision was "clearly foreshadowed." *See Chevron*, 404 U.S. at 106, 92 S.Ct. at 355. But the 1979 EEOC regulations and subsequent court cases suggest that, as a practical matter, the *Newport News* result could come as no surprise. And in light of the conflicting factors we have just discussed, it did not overrule any clear "past precedent *on which litigants may have relied.*" *Id.*, (emphasis added). *See EEOC v. MTC Gear Corp.*, 595 F.Supp. 712 (N.D.Ill.1984).

Application of the second *Chevron* factor requires that we consider the "purpose and effect" of the rule applying the PDA to nonemployees and "whether retrospective operation will further or retard its operation." *Chevron*, 404 U.S. at 106–07, 92 S.Ct. at 355–56. As part of Title VII, the PDA shares Title VII's prophylactic purpose of achieving "equality of employment opportunities and [removing] barriers that have operated in the past," *Griggs*, 401 U.S. at 429–30, 91 S.Ct. at 853, and its remedial purpose of making "persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975).

In *Albemarle*, deciding whether to award back pay to plaintiffs who, because of racial discrimination, had been denied promotion and other employment opportunities, the Supreme Court made a connection between the prophylactic and remedial purposes:

If employers faced only the prospect of an injunctive order, they would have lit-

tle incentive to shun practices of dubious legality. It is the reasonably certain prospect of a backpay award that "provide[s] the spur or catalyst which causes employers and unions to self-examine and to self-evaluate their employment practices...."
*Id.* at 417–18, 95 S.Ct. at 2371–72 (*quoting United States v. N.L. Industries, Inc.,* 479 F.2d 354, 379 (8th Cir.1973)).

The prospect of retroactive liability for illegal and inadequate health insurance coverage can be expected to provide the same kind of catalyst to self-evaluation. That prospect is more than a dimly visible spectre; *Albemarle* established a presumption of retroactive liability in Title VII cases. *See Los Angeles Dep't of Water & Power v. Manhart,* 435 U.S. 702, 719, 98 S.Ct. 1370, 1380, 55 L.Ed.2d 657 (1978). The *Albemarle* presumption can be overcome "only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle,* 422 U.S. at 421, 95 S.Ct. at 2373. To deny retroactivity here would frustrate the statutory make-whole purpose. It would also frustrate the purpose of eradicating discrimination because it would provide no incentive for "self-evaluation" but would make it worthwhile for Puget Sound and other employers to wait as long as possible to comply with the PDA.

With regard to furthering the statutory purposes, the Supreme Court has denied retroactivity in Title VII cases only twice. In *Manhart,* the Supreme Court found discriminatory a pension plan which required women to make greater contributions to the system than those required of men. The Court was concerned with the complexity and expense of requiring retirement systems to refund the excess contributions, noting that "[r]etroactive liability could be devastating for a pension fund." 435 U.S. at 722, 98 S.Ct. at 1382. The Court also noted that the decision dictated "marked departure from past practice" in computing employee contributions to pensions. *Id.*

In *Arizona Governing Committee v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983), the Supreme Court found discriminatory the converse of *Manhart,* a situation in which men and women had made equal pension contributions, but men received greater pension payments. Again, the majority refused to allow retroactivity, primarily fearing that the cost involved would threaten the solvency of the pension plans themselves. 103 S.Ct. at 3509–10.

We find no indication in *Newport News* that its application should be only prospective. EEOC urges us to read into *Manhart* and *Norris* a Supreme Court policy that retroactivity will be assumed unless it is specifically not allowed. EEOC argues that because the question was not discussed in *Newport News,* the Court intended retroactivity. On the other hand, Puget Sound finds in *Manhart* and *Norris* a Supreme Court determination that retroactivity is not appropriate in cases involving insurance plans and suggests that *Newport News* was intended to fit into the same category of cases. While we do not necessarily agree with EEOC that the Supreme Court's silence was a directive on the question of retroactivity, we must disagree with Puget Sound's inferences for two reasons.

First, *Newport News* was decided before *Norris,* making it most unlikely that the Supreme Court intended *Newport News* to fit into an extant *Manhart* "pattern." Second, the Supreme Court in *Norris* and *Manhart* may have been setting a retroactivity policy with regard to pension plans. But pension plans can be distinguished from health insurance plans of the kind at issue here. Retroactivity in this case would involve reimbursement only in a relatively small number of specific instances where a male employee and his spouse have privately financed pregnancy related expenses which would have been covered for a female employee and for which they had no other health insurance coverage.

"Absent *special circumstances* a victim of a Title VII violation is entitled to whatever retroactive relief is necessary to undo any damage resulting from the violation." *Norris,* 103 S.Ct. at 3503 (emphasis added).

Puget Sound has not made a *Manhart-Norris* showing that the cost for it and similarly situated employers will be voluminous enough to qualify as "special circumstances" which outweigh the fundamental remedial focus of Title VII.

Finally, the equities of the case favor retroactivity. After passage of the PDA, Puget Sound had a choice between insuring or not insuring the pregnancy-related expenses of its workers' nonemployee spouses. Even in the face of the significant warnings we noted above and despite phase-in time for compliance allowed by the PDA, Pub.L. 95–955 § 2(b), 92 Stat. 2076; *see* 1978 U.S.Code Cong. & Ad.News at 4756, Puget Sound gambled that the EEOC regulations were incorrect and that nonemployee spouses need not be fully insured. Puget Sound chose to provide minimal coverage, knowing that the minimum might be found to be unlawful; it cannot now complain that it is being required retroactively to compensate the employees for risks it had opportunity and good reason to insure from the beginning.

Even assuming Puget Sound in good faith thought the EEOC guidelines were wrong and thought it was pursuing a lawful course of action, Puget Sound's good faith in interpreting the EEOC regulations and case law is not relevant to whether retroactivity is allowed. The absence of bad faith "is not a sufficient reason for denying backpay." *Albemarle*, 422 U.S. at 422, 95 S.Ct. at 2374.

Puget Sound has expressed concern that *Newport News* will lead to rising costs for employer-sponsored health insurance and that retroactive application of *Newport News* will only add to those costs, some of which the employees will ultimately bear. We note first that Puget Sound, as the liable employer, must bear the full expense of retroactively compensating employees and their nonemployee spouses who have incurred pregnancy-related costs for which they were not insured. None of that expense is to be transmitted in any fashion to Puget Sound's employee-insureds.

Second, our decision should not be affected by the prospective financial impact of *Newport News*. Any increase in expense to the insurer will doubtless be the subject of bargaining between employees and employers with regard to the desirable extent of insurance coverage and costs. Neither the PDA nor *Newport News* forces Puget Sound or any other employer to provide any pregnancy coverage at all; the law does require that whatever coverage is available must not be limited to certain groups in a discriminatory manner. Therefore, in keeping with the Supreme Court's admonition in *Albemarle* that employers should strive to further the purposes of Title VII and eliminate discrimination, 422 U.S. at 418, 95 S.Ct. at 2372, we reverse.