**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHARLES W. GRIBBEN,
          *Plaintiff-Appellant,*

v.

UNITED PARCEL SERVICE, INC.,
          *Defendant-Appellee.*

No. 06-15964

D.C. No.
CV-04-2814-PHX-
FJM

OPINION

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, District Judge, Presiding

Argued and Submitted
February 12, 2008—San Francisco, California

Filed June 16, 2008

Before: William C. Canby, Jr., David R. Thompson, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Thompson

## COUNSEL

Daniel Bonnet, Phoenix, Arizona, for the plaintiff-appellant.

David T. Barton, Phoenix, Arizona, for the defendant-appellee.

## OPINION

THOMPSON, Senior Circuit Judge:

Charles W. Gribben appeals the district court's judgment in favor of his employer United Parcel Service ("UPS") in his action alleging disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"). Gribben, who suffers from congestive heart failure and cardiomyopathy, requested and was denied accommodations for certain limitations imposed by his cardiologist. The district court granted summary judgment in favor of UPS on the discrimination claim and a jury returned a verdict in favor of UPS on the retaliation claim. We have jurisdiction under 28 U.S.C. § 1291. We affirm the jury verdict in favor of UPS on the retaliation claim, reverse the district court's summary judgment in favor of UPS on the disability claim, and remand that claim to the district court for further proceedings.

### I.   Background

In 1982, Gribben commenced employment with UPS and since 1998 worked as a UPS shifter driver. Shifter drivers use

vehicles to transfer trailers among various sites. Gribben was generally assigned to an air-conditioned vehicle but, due to business demands, UPS could not guarantee that he would always have an air-conditioned vehicle.

In June 2000, Gribben was diagnosed with dilated cardio-myopathy and paroxysmal arterial fibrillation. He has substantial limitations as a result of this condition. He testified that he becomes light-headed, has difficulty concentrating and breathing, has chest pain when undertaking activities in extreme heat for extended periods of time, and has similar symptoms when lifting weight over 50 pounds. Gribben was told by his cardiologist not to engage in certain activities for more than 20 minutes at a time in temperatures above 90 degrees Fahrenheit.

Due to his medical condition, and pursuant to the ADA, Gribben requested that UPS provide him with an air-conditioned vehicle. UPS denied his request for this accommodation. Beginning in June 2002, Gribben took an unpaid leave of absence. On or about November 15, 2002, Gribben filed a charge of discrimination and retaliation with the EEOC, alleging that he was both discriminated and retaliated against on the basis of his disability. The EEOC conducted an investigation and issued a favorable cause finding by way of a Letter of Determination dated March 17, 2004.

In June 2003, Gribben returned to work at UPS. Although UPS had denied Gribben's request for accommodation, UPS nonetheless provided him with an air-conditioned vehicle for every workday from June 2003 until March 31, 2004. On March 31, 2004, when UPS failed to provide an air-conditioned vehicle for Gribben to use, he refused to work. He was then discharged by UPS. UPS contends that Gribben was discharged for gross insubordination, while Gribben asserts that he was discharged in retaliation for the EEOC charge.

On April 1, 2004, following his termination, Gribben filed a second charge with the EEOC, alleging retaliation in violation of the ADA. The EEOC investigated that charge and issued a second favorable cause finding. After obtaining the requisite Notice of Right to Sue, Gribben filed suit.

The district court granted summary judgment in favor of UPS on Gribben's claim of ADA discrimination; the retaliation claim went to trial. In response to a motion in limine, the district court ruled that Gribben had not specifically pled facts pertaining to his contentions concerning fitness for duty and forced unpaid medical leave as part of his retaliation claim and refused to allow the jury to consider those matters. Consequently, the only issue left for the jury to decide was whether Gribben's March 31, 2004 termination was in retaliation for Gribben having filed his first charge of discrimination with the EEOC.

The jury rendered its verdict in favor of UPS and the district court entered judgment accordingly. Gribben timely filed a Motion for New Trial raising claims of error regarding the trial court's summary judgment and its rulings on UPS's motion in limine and on evidentiary and jury instruction matters. That motion was denied. Gribben now appeals the district court's summary judgment in favor of UPS on his ADA discrimination claim, and the district court's denial of his motion for a new trial on his retaliation claim.

## II.  Discussion

### A.  ADA Claim

We review de novo a grant of summary judgment. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there is a genuine issue of material fact and whether the district court correctly applied the relevant substantive law. *See id.*

**[1]** The ADA prohibits discrimination against a qualified individual with a disability in regard to terms, conditions and privileges of employment. 42 U.S.C. § 12112(a). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

**[2]** Whether Gribben's heart condition constituted a disability under the ADA involves three inquiries: (1) whether Gribben's condition was a physical impairment; (2) whether the life activities from which he was impaired (e.g., walking) amounted to major life activities; and (3) whether Gribben's impairment substantially limited him from performing the identified major life activities. *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

Gribben argues that there is substantial evidence in the record that he was disabled within the meaning of the ADA due to substantial limitations on a number of major life activities including, but not limited to, walking. UPS concedes that Gribben's heart condition is a physical impairment, and that the life activities limited by his heart condition, including walking, amount to "major life activities." UPS, however, argues that Gribben's impairment did not "substantially limit" him from performing any major life activity.

"Substantially limits" is defined as:

> i) Unable to perform a major life activity that the average person in the general population can perform; or

> ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the

average person in the general population can per-
form that same major life activity.

29 C.F.R. § 1630.2(j)(1) (2006).

The regulations further provide that whether someone is
substantially limited in a major life activity is to be examined
using such factors as:

    i) The nature and severity of the impairment;

    ii) The duration or expected duration of the impair-
    ment; and

    iii) The permanent or long term impact, or the
    expected permanent or long term impact of or result-
    ing from the impairment.

29 C.F.R. § 1630.2(j)(2) (2006).

The district court considered Gribben's claim under this
framework and determined that his disability was not substan-
tially limiting "on its face" because he was able to perform
the major life activities at issue.[1] The district court granted
summary judgment in favor of UPS because Gribben "failed
to submit any evidence as to the abilities of an average person
in the general population to participate in outdoor activities in
the Phoenix summer." Gribben argues that the district court
erred in reaching this conclusion because he was not required
to submit such comparative evidence. We agree.

**[3]** Gribben's testimony alone regarding the significance of
his impairment is sufficient to create a genuine issue of mate-
rial fact at the summary judgment stage. *See Head v. Glacier
Nw., Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005) ("[O]ur prece-

---

[1]He could not, however, perform them for more than 20 minutes in tem-
peratures over 90 degrees.

dent supports the principle that a plaintiff's testimony may suffice to establish a genuine issue of material fact."). As a result, Gribben was not required to submit the comparative evidence the district court required. *Id.* ("Ninth Circuit precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity at the summary judgment stage.").[2]

[4] To determine whether the grant of summary judgment was appropriate, we must review the evidence of Gribben's alleged impairment. *Id.* at 1059. Gribben's cardiologist testified at his deposition that Gribben had nonischemic cardiomyopathy, and that when Gribben worked in the extremes of heat, he experienced shortness of breath, weakness and chest pain. The cardiologist also testified that Gribben could not do any heavy lifting or exertion for prolonged periods of time. Gribben asserted that as a result of this disability, he experienced "labored breathing," that he could not "be in heat for extended periods of time," and that he experienced dizziness, fatigue and difficulty concentrating. He testified at his deposition that he experienced labored breathing when he was anxious and when he exerted himself too much and in the heat.

---

[2]UPS's reliance on *Wong v. Regents of the University of California* is misplaced. 410 F.3d 1052 (9th Cir. 2005). In *Wong*, the plaintiff had a learning impairment, which he claimed constituted a "disability" under the ADA. *Id.* at 1055. We focused on the particular facts of that case in asking "whether a person who has achieved considerable academic success, beyond the attainment of most people or of the average person, can nonetheless be found to be 'substantially limited' in reading and learning." *Id.* After reviewing the evidence, we concluded that such a finding was "implausible." *Id.* at 1065. "Because the factual context made implausible [the plaintiff's] contention that he was disabled in the activity of 'learning' as compared to most people, he was required to come forward with *more persuasive evidence than otherwise would be necessary* to show that there is a genuine issue for trial." *Id.* at 1066 (citations and internal quotation marks omitted) (emphasis added). We concluded that Wong failed to meet this heightened evidentiary burden. *Id.* Nothing in the present case, by contrast, makes a disability finding implausible and necessitates a higher evidentiary burden.

Gribben testified that he had labored breathing "on and off all the time" and that the labored breathing stopped him from doing work that required too much exertion such as jobs that require "loading or unloading trailers or sorting" or extended physical activity such as lifting. He also testified that his heart condition substantially limits his ability to walk, run, climb, pull, push, squat, bend, lift and breathe.

[5] There was sufficient evidence in the record at the summary judgment proceeding to establish a genuine issue of material fact as to whether Gribben's impairment was substantial and limited his ability to perform regular daily activities including breathing, thinking and physical activities in temperatures of 90 degrees or more. Accordingly, the district court erred in determining at summary judgment that Gribben was not disabled within the meaning of the ADA.

## B. Retaliation Claim

Gribben appeals certain evidentiary rulings made during the jury trial of his retaliation claim. We review evidentiary rulings for an abuse of discretion. *See Tritchler v. County of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004). Gribben contends that he was denied the opportunity to elicit testimony about UPS's failure to personally speak to his treating physician about his accommodation request. This argument was not presented to the district court, and therefore it has been waived.[3] *See, e.g., Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 n.5 (9th Cir. 2003). Gribben also argues that the district court erred in excluding evidence that the request for an independent medical examination and forced medical leave constituted retaliation for his having requested accommodation under the ADA. Because Gribben did not assert this claim in his complaint, the parties' joint proposed case management

---

[3]In addition, the testimony does not appear to be relevant to Gribben's retaliation claim, although it may be relevant to Gribben's discrimination claim on remand.

plan, or in his response to UPS's motion for summary judgment, the district court did not abuse its discretion in excluding at trial evidence pertaining to the claim. *See S.M. v. J.K.*, 262 F.3d 914, 917 (9th Cir. 2001), *amended by* 315 F.3d 1058 (2003).

**[6]** Gribben contends the district court erred in excluding the testimony of Charles Rahill which he offered "strictly for impeachment purposes" and as to which he would have agreed to a limiting instruction. The evidence was excluded on the ground that Gribben had failed to disclose it in pretrial discovery. We agree that the district court erred because impeachment evidence does not have to be revealed in pretrial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A), 26(a)(3). However, to reverse on the basis of this erroneous evidentiary ruling, the error must be prejudicial. *See Tritchler*, 358 F.3d at 1155. Prejudice means that, more probably than not, the district court's error tainted the verdict. *See McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1032 (9th Cir. 2003), *cert. denied*, 540 U.S. 1160 (2004).

**[7]** We conclude that the error in excluding Rahill's testimony was not prejudicial. Jerry Dalzell, a UPS labor relations manager, was the person who made the decision to terminate Gribben. Although the excluded testimony which Rahill would have given may have evidenced Dalzell's knowledge of findings by the EEOC, it would not have contradicted Dalzell's testimony. As a result, the district court's error was not prejudicial. *See Geurin v. Winston Indus., Inc.*, 316 F.3d 879, 882 (9th Cir. 2002).

Other excluded evidence would have established that a conversation took place between Dalzell and another UPS manager, Steve Stevens. However, Dalzell did not deny that this conversation took place — only that he did not recall it. The exclusion of this evidence was insufficient to taint the jury's verdict. *See McEuin*, 328 F.3d at 1032; *Guerin,* 316 F.3d at 892.

**[8]** Gribben argues the district court should have admitted UPS's prior consent decree with the EEOC, which UPS agreed to in 2001 as part of a "no-fault" settlement. The district court excluded the consent decree on the ground that its probative value was outweighed by its potential for prejudice. Gribben has provided no argument on appeal that would establish that the district court erred in this ruling. In any event, the district court did not abuse its discretion in refusing to admit the consent decree because it was irrelevant and would have been unduly prejudicial, confusing, and misleading. *See* Fed. R. Evid. 402, 403.

**[9]** Finally, we conclude that the district court did not err in refusing to give the jury a punitive damages instruction. The jury determined that the evidence was insufficient to establish a claim for retaliation. This determination supports the district court's decision that the same evidence was insufficient to warrant an instruction on punitive damages. *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1087 (9th Cir. 2005) (error in instructing the jury does not require reversal if harmless). A punitive damages instruction may, however, be warranted in connection with Gribben's disability discrimination claim which we remand to the district court. We express no opinion on that.

The parties shall bear their own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**