**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TANNISLADO ALVARADO,
           *Plaintiff-Appellant,*

v.

CAJUN OPERATING COMPANY, dba
AFC Enterprises, Inc.,
           *Defendant-Appellee.*

No. 08-15549

D.C. No.
04-CV-00631-CKJ

OPINION

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted
June 2, 2009—Las Vegas, Nevada

Filed December 11, 2009

Before: Johnnie B. Rawlinson and Jay S. Bybee,
Circuit Judges, and Larry Burns,* District Judge.

Opinion by Judge Rawlinson

---

*The Honorable Larry Burns, United States District Judge for the
Southern District of California, sitting by designation.

16379

**COUNSEL**

Richard M. Martinez, Law Office of Richard M. Martinez, Tucson, Arizona, for appellant Tannislado Alvarado.

Lori L. Voepel (argued) and Rachel Love, Jones, Skelton & Hochuli, P.L.C., Phoenix, Arizona, for appellee Cajun Operating Co.

**OPINION**

RAWLINSON, Circuit Judge:

Appellant Tannislado Alvarado (Alvarado) filed a retaliation claim pursuant to the Americans with Disabilities Act (ADA) alleging that Appellee Cajun Operating Co. (Cajun) retaliated against him for complaining that his manager had discriminated against him based on his disability.

Alvarado challenges the district court's grant of Cajun's motion in limine barring Alvarado from seeking punitive and compensatory damages for his ADA retaliation claim. Alvarado also contends that the district court erred in holding that, because ADA retaliation claims are limited to equitable relief, Alvarado was not entitled to a jury trial on his retaliation claim. We agree with the district court's resolution of these issues, and affirm the judgment.

I.  *BACKGROUND*

At the age of sixty-five, Alvarado was hired by Jesus Tapia (Tapia), the store manager of a Church's Chicken (Church's)

in Tuscon, Arizona, to perform part-time maintenance work. Alvarado eventually became a cook at Church's. The cook position required the performance of various duties, including cleaning the walk-in refrigerator.

For approximately three and one-half years, Alvarado performed satisfactorily according to job evaluations from Tapia and his successor, Tina Montague (Montague). That all changed when Alvarado called Church's hotline to complain that Montague had made inappropriate comments about his age. When confronted, Montague denied any wrongdoing. However, three days later she gave Alvarado his first Performance Counseling Record (counseling record) delineating Alvarado's asserted failure to complete his daily duties, such as panning and rotating chicken, battering chicken, and cleaning the walk-in refrigerator. Olivia Martinez (Martinez), an assistant manager, gave Alvarado two additional counseling records for similar derelictions. Martinez subsequently stated that she only wrote the counseling records because Montague told her to do so. According to Martinez, Alvarado did not deserve the counseling records. However, over the next nine months, Alvarado received four more similar counseling records from assistant store manager Don Magel.

In response to the counseling reports, Alvarado called the hotline a second time, accusing Montague of retaliation against him for making the first hotline call. Alvarado also complained to Montague about the pain in his hands when he worked in the walk-in refrigerator. Montague referred Alvarado to Dr. Robert Johnson, who "cleared [Alvarado] to return to work the same day after noting that [Alvarado] suffered only from arthritis, a condition common among people his age."

After Alvarado was terminated, he filed a lawsuit against Cajun alleging employment discrimination in violation of Title I of the ADA, 42 U.S.C. § 12112; age discrimination in violation of 29 U.S.C. § 623; race and national origin discrim-

ination in violation of 42 U.S.C. § 1981; and employment discrimination and retaliation claims pursuant to 29 U.S.C. § 215(a)(3) and 42 U.S.C. § 12203.[1]

Cajun filed a motion in limine to bar Alvarado from seeking punitive and compensatory damages for his ADA retaliation claim. Cajun also asserted that, because only equitable relief was available, Alvarado did not have a right to a jury trial on his retaliation claim.

The district court granted Cajun's motion in limine, concluding that the plain language of 42 U.S.C. § 1981a(a)(2) precluded compensatory damages, punitive damages, and trial by jury.

The district court certified an interlocutory appeal on these issues, and we granted permission to appeal the district court's interlocutory order.

## II.  *STANDARD OF REVIEW*

"We review a district court's decision involving interpretation of a federal statute *de novo*." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1229 (9th Cir. 2008) (citation omitted).

## III.  *DISCUSSION*

Alvarado maintains that the district court erred in interpreting the ADA to limit his remedies to those available in equity. Alvarado posits that remedies provided under the ADA are coextensive with remedies available under the Civil Rights

---

[1]The district court granted summary judgment in favor of the employer on Alvarado's claim that he was discriminated against based on a disability. However, the district court denied summary judgment on Alvarado's age discrimination and retaliation claims. According to the district court, Alvarado decided not to pursue his claims premised on race and national origin discrimination.

Acts of 1964 and 1991. More specifically, Alvarado contends that because compensatory and punitive damages are available under the Civil Rights Acts, compensatory and punitive damages are available for ADA retaliation claims.

**[1]** Under the ADA, 42 U.S.C. § 12203(a), the anti-retaliation provision, provides:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). Instead of delineating specific remedies available for retaliation claims, section 12203(c) references the remedies and procedures available pursuant to 42 U.S.C. §§ 12117, 12133, and 12188. *See* 42 U.S.C. § 12203(c). In turn, 42 U.S.C. § 12117 references remedies provided by 42 U.S.C. §§ 2000e-4 through 2000e-9. *See* 42 U.S.C. § 12117(a).

Section 2000e-5(g)(1) provides:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more

than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

42 U.S.C. § 2000e-5(g)(1).

**[2]** 42 U.S.C. § 1981a expanded the remedies available pursuant to 42 U.S.C. § 2000e-5 by providing for punitive and compensatory damages for specified disability claims. Section 1981a(a)(2) states:

In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C.A. §§ 2000e-5 or 2000e-16] (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117(a)), and section 794a(a)(1) of Title 29, respectively) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under section 791 of Title 29 and the regulations implementing section 791 of Title 29, or who violated the requirements of section 791 of Title 29 or the regulations implementing section 791 of Title 29 concerning the provision of a reasonable accommodation, or *section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112), or committed a violation of section 102(b)(5) of the Act*, against an individual, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

42 U.S.C. § 1981a(a)(2) (emphasis added). Noticeably absent is any reference to 42 U.S.C. § 12203, the ADA retaliation provision.

**[3]** Although we have not resolved whether compensatory and punitive damages are available for ADA retaliation claims,[2] other courts have applied divergent approaches to interpret the ADA's remedial provisions. In *Kramer v. Banc of Am. Sec.*, 355 F.3d 961 (7th Cir.), *cert. denied* 542 U.S. 932 (2004), the Seventh Circuit held that punitive and compensatory damages were not available for ADA retaliation claims. The Seventh Circuit opined:

> We thus conclude that the 1991 Civil Rights Act does not expand the remedies available to a party bringing an ADA retaliation claim against an employer and therefore compensatory and punitive damages are not available. A close reading of the plain language of § 1981a(a)(2) makes it clear that the statute does not contemplate compensatory and punitive damages for a retaliation claim under the ADA. Section 1981a(a)(2) permits recovery of compensatory and punitive damages (and thus expands the remedies available under § 2000e-5(g)(1)) only for those claims listed therein. With respect to the ADA, § 1981a(a)(2) only lists claims brought under §§ 12112 or 12112(b)(5). Because claims of retaliation under the ADA (§ 12203) are not listed, compensatory and punitive damages are not available for such claims. Instead, the remedies available for ADA retaliation claims against an employer are limited to the remedies set forth in § 2000e-5(g)(1).

[2]In *Gribben v. United Postal Serv., Inc.*, 528 F.3d 1166, 1172 (9th Cir. 2008), we addressed the district court's refusal to provide a punitive damages instruction in a case involving an ADA retaliation claim. However, we did not squarely confront the issue presented by this case, as we held that there was insufficient evidence of retaliation to warrant a punitive damages instruction. *See id.*

*Kramer*, 355 F.3d at 965 (citation omitted). The Seventh Circuit, therefore, held that "[b]ecause the plain language of § 1981a(a)(2) limits its application to specific claims, it is inappropriate to expand the scope of the statute in reliance on legislative history to include claims for retaliation by an employer under the ADA." *Id.* at 966; *see also Miles-Hickman v. David Powers Homes, Inc.*, 613 F. Supp. 2d 872, 878-79 (S.D.Tex. 2009); *E.E.O.C. v. Faurecia Exhaust Sys., Inc.*, 601 F. Supp. 2d 971, 976 (N.D. Ohio 2008); *Sabbrese v. Lowe's Home Ctrs., Inc.*, 320 F. Supp. 2d 311, 331 (W.D. Pa. 2004); *Johnson v. Ed Bozarth #1 Park Meadows Chevrolet, Inc.*, 297 F. Supp. 2d 1286, 1289 (D. Colo. 2004); *Sink v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 1085, 1100-01 (D. Kan. 2001).[3,4]

**[4]** Several district courts have also held to the contrary. In *Ostrach v. Regents of the Univ. of Cal.*, 957 F. Supp. 196, 201 (E.D. Cal. 1997), the district court emphasized section 1981a's use of the term "complaining party." The district court observed that:

> The statute extends to aggrieved plaintiffs the remedies available pursuant to sections 107, 203 and 308 of the Act. In turn, Congress has provided that in an

---

[3]In two unpublished opinions, the Fourth Circuit followed *Kramer*, and held that punitive and compensatory damages were unavailable for ADA retaliation claims. *See Bowles v. Carolina Cargo, Inc.*, 100 Fed. Appx. 889, 890 (4th Cir. 2004); *see also Rhoads v. F.D.I.C.*, 94 Fed. Appx. 187, 188 (4th Cir. 2004).

[4]Alvarado relied on *Salitros v. Chrysler Corp.*, 306 F.3d 562 (8th Cir. 2002), *Foster v. Time Warner Entm't Co.*, 250 F.3d 1189 (8th Cir. 2001), *Muller v. Costello*, 187 F.3d 298 (2d Cir. 1999), and *E.E.O.C v. Wal-Mart Stores, Inc.*, 187 F.3d 1241 (10th Cir. 1999), all of which affirmed compensatory and punitive damage awards for ADA retaliation claims. However, those cases did not address the statutory interpretation of 42 U.S.C. § 1981a, as they involved only challenges to the sufficiency of the evidence supporting the jury awards. *See Salitros*, 306 F.3d at 570; *Foster*, 250 F.3d at 1196-97; *Muller*, 187 F.3d at 314-15; *Wal-Mart Stores*, 187 F.3d at 1248-49.

> action brought by a complaining party under the powers, remedies and procedures set forth in § 716 or 717 of the Civil Rights Act of 1964 (as provided in section 107(a) of the Americans with Disabilities Act of 1990) against a respondent who engaged in unlawful intentional discrimination[,] the complaining party may recover compensatory and punitive damages. In turn, complaining party is defined by the Civil Rights Act of 1991 to include persons who bring actions under Title I of the Americans with Disabilities Act, and thus would appear to include suits charging retaliation.

*Ostrach*, 957 F. Supp. at 201 (citations, alterations, footnote reference, and internal quotation marks omitted). Based on this broad application of section 1981a's terms, the district court held that it "must presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise." *Id.* (citation and internal quotation marks omitted). Thus, the district court held that the plaintiff could pursue general damages pursuant to the ADA's retaliation provision. *Id.*[5]

In *Edwards v. Brookhaven Sci. Assocs., LLC*, 390 F. Supp. 2d 225, 236 (E.D. N.Y. 2005), the district court expressly rejected the Seventh Circuit's approach in *Kramer*. The district court emphasized the coextensive nature of Title I's remedies, explaining that:

---

[5]It is also notable that the district court in *Ostrach* relied on *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60 (1992), for the proposition that it could award any available remedies. *Ostrach*, 957 F. Supp. at 201. However, in *Franklin*, the Supreme Court determined that Title IX's implied right of action necessitated the formulation of a corresponding remedy. *See Franklin*, 503 U.S. at 71 ("Since the Court . . . concluded that this statute supported no express right of action, it is hardly surprising that Congress also said nothing about the applicable remedies for an implied right of action.").

The Seventh Circuit's analysis makes it clear that § 1981(a)(1) does not list § 12203 as a claim that permits recovery of compensatory damages. However, no sound canon of interpretation requires Congress to speak with extraordinary clarity. The statute must be read in conjunction with and in light of the context, structure, and related statutory provisions. In the Court's view, the omission of § 12203 in § 1981 is of no consequence when § 1981 is read in conjunction with the relevant provisions of the ADA. As stated above, the retaliation provision of the ADA contains no remedy of its own. Rather, it is clear that the remedies and procedures available to aggrieved persons for violations of § 12203 are the same as the remedies and procedures available under Title I of the ADA. Considering that the remedies available for retaliation under the ADA are commensurate with those available under Title I, it was unnecessary for Congress to separately mention retaliation in § 1981. Thus, it is fair to assume that the expansive effect of § 1981(a) applies equally to claims under Title I as it does to retaliation claims by virtue of the fact that the remedies available for retaliation claims incorporate, and are coextensive with, the remedies available under Title I.

*Edwards*, 390 F. Supp. 2d at 236 (citations, alterations, and internal quotation marks omitted). The district court concluded that, because it could award plaintiff any remedy available under the law, compensatory damages were in play for ADA retaliation claims. *Id.*; *see also Rumler v. Dept. of Corrs.*, 546 F. Supp. 2d 1334, 1342-43 (M.D. Fla. 2008); *Lovejoy-Wilson v. Noco Motor Fuels, Inc.*, 242 F. Supp. 2d 236, 240-41 (W.D. N.Y. 2003).

The analysis employed in *Edwards* has been criticized. In *Infantolino v. Joint Indus. Bd. of Elec. Indus.*, 582 F. Supp. 2d 351, 362 (E.D.N.Y. 2008), the district court observed that sec-

tion 1981a's failure to include ADA retaliation claims may have been an oversight.[6] The district court nonetheless rejected the reasoning of *Edwards* "because the relevant provision of the Civil Rights Act of 1991 authorizes additional remedies for violations of Title I (specifically, punitive and compensatory damages), and does not even mention Title V." *Id.* at 363 (citation omitted).

Similarly, in *Arredondo v. S2 Yachts*, 496 F. Supp. 2d 831, 835 (W.D. Mich. 2007), the district court commented:

> The court in *Edwards* did not explain what meaning, if any, would be given to the references to §§ 12112 and 12112(b)(5) in § 1981a(a)(2) under its construction of the statute. Section 1981a is referenced in three additional ADA related statutes, 2 U.S.C. § 1311, 3 U.S.C. § 411 and 42 U.S.C. § 1988. None of these three other statutes provide a context in which the references to §§ 12112 and 12112(b)(5) in § 1981a would have any meaning if the Court adopted the position of the Court in *Edwards*. Additionally, Plaintiff has not identified any situation in which the references to §§ 12112 and 12112(b)(5) in § 1981a(a) (2) would have any meaning if the Court adopted Plaintiff's proposed interpretation of § 1981a(a)(2). Thus, the position adopted by the court in *Edwards* voids the references to §§ 12112 and 12112(b)(5) in § 1981a(a)(2) of any meaning in any conceivable context.

---

[6]Even if the unambiguous text of § 1981a could be fairly characterized as a drafting error, we lack authority to provide the necessary correction. *See Stratman v. Leisnoi, Inc.*, 545 F.3d 1161, 1172 (9th Cir. 2008) ("If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think is the preferred result.") (citation, alteration, and internal quotation marks omitted).

(citations and footnote reference omitted).

In addition, the Seventh Circuit eschewed the reasoning of *Ostrach* because of the district court's parsing of section 1981a's language. Specifically, the Seventh Circuit observed that the district court's analysis omitted the specific ADA sections referenced in section 1981a. *See Kramer*, 355 F.3d at 966 ("Significantly, what is omitted . . . is crucial to the question at issue. The omitted language lists the specific statutory sections for which a party may recover compensatory and punitive damages. The section providing an action for retaliation, § 203 of the ADA (42 U.S.C. § 12203), is not listed.").

**[5]** The lack of uniformity among the courts underscores the complexity of this issue. Nevertheless, we are persuaded that the Seventh Circuit's reliance on the plain language of 42 U.S.C. § 1981a(a)(2) adheres more closely to the precepts of statutory construction.

**[6]** "The starting point for the interpretation of a statute is always its language, and courts must presume that a legislature says in a statute what it means and means in a statute what it says there[.]" *Azarte v. Ashcroft*, 394 F.3d 1278, 1285 (9th Cir. 2005) (citations, alteration, and internal quotation marks omitted). We must "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Any inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Gorospe v. C.I.R.*, 451 F.3d 966, 968 (9th Cir. 2006) (citation and alteration omitted). "A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1024 (9th Cir. 2007) (citation omitted).

**[7]** The text of section 1981a is not ambiguous. It explicitly delineates the specific statutes under the ADA for which puni-

tive and compensatory damages are available. In particular, section 1981a references 42 U.S.C. §§ 12112 and 12112(b)(5) of the ADA. *See* 42 U.S.C. § 1981a(a)(2). Section 12112 involves discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Section 12112(b)(5) encompasses the failure to make reasonable accommodations and denial of employment opportunities based on a disability. Section 1981a, therefore, limits its remedial reach to ADA discrimination claims, and does not incorporate ADA retaliation claims brought pursuant to 42 U.S.C. § 12203. This limitation is unsurprising because ADA retaliation claims have been historically redressed by equitable relief only pursuant to 42 U.S.C. § 2000 e-5(g)(1). *See, e.g.*, *Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1067-69 (9th Cir. 2005).

**[8]** We acknowledge that legislative history ostensibly supports the notion that Congress intended a broad remedial purpose for the Civil Rights Act of 1991. *See, e.g.*, H.R. Rep. 102-40(II), at 27 (1991), *reprinted in* 1991 U.S.C.C.A.N. 694, 721 ("All too frequently, Title VII leaves victims of employment discrimination without remedies of any kind of [sic] their injuries and allows employers who intentionally discriminate to avoid any meaningful liability.") (footnote reference omitted). However, the legislative history is not dispositive, because the text of section 1981a is unambiguous. Indeed, we have long held that where a statute is unambiguous, we need not resort to legislative history in applying the statute. *See United States v. Sioux*, 362 F.3d 1241, 1246 (9th Cir. 2004) ("[I]t is well-settled that reference to legislative history is inappropriate when the text of the statute is unambiguous.") (citations and internal quotation marks omitted).

**[9]** In sum, although a convoluted analytical path exists to concluding that punitive and compensatory damages are

available for ADA retaliation claims, this analysis contravenes the basic tenets of statutory construction. As the district court in *Faurecia Exhaust Sys., Inc.*, opined:

> Nowhere does the statutory text provide for compensatory or punitive damages on a claim under § 12203. It is no herculean task to follow the interrelated statutory references to determine which remedies are available on a given claim. By performing the statutory analysis, it is plain that any interpretation of § 1981a(a)(2) as providing for compensatory or punitive damages for a § 12203 retaliation claim empties the former's explicit references to §§ 12112 and 12112(b)(5) of any meaning. Consequently, such an interpretation is untenable. Conversely, the interpretation arrived at by the Seventh Circuit in *Kramer*, which gives full effect to those same references, comports with the relevant principles of statutory construction and is, therefore, highly persuasive.

*Faurecia Exhaust Sys., Inc.*, 601 F. Supp. 2d at 975-76 (footnote reference omitted).

We are not otherwise convinced by the reasoning in the recent case of *Baker v. Windsor Republic Doors*, No. 1:06-cv-01137, ___ F. Supp. 2d ___, 2009 WL 2064584 (W.D. Tenn. July 10, 2009). Relying on *Gomez-Perez v. Potter*, 128 S.Ct. 1931 (2008), the district court held that compensatory damages are available for ADA retaliation claims. *Baker*, 2009 WL 2064584, at *4. However, *Gomez-Perez*, a case involving the Age Discrimination in Employment Act (ADEA), did not even address the ADA's remedial provisions. Rather, the Supreme Court decided "whether the [ADEA's] statutory phrase 'discrimination based on age' includes retaliation based on the filing of an age discrimination complaint." 128 S.Ct. at 1936. Specifically, the Supreme Court "interpret[d] the ADEA federal-sector provision's prohibition of discrimination based on age as likewise proscribing retaliation." *Id.* at

1937 (internal quotation marks omitted). Although the Supreme Court held that the ADEA's anti-discrimination provision encompassed a cause of action for retaliation, the Supreme Court did not address the applicable statutory remedies, and in no way undermined the proposition that "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974).

Thus, *Gomez-Perez* is inapposite, particularly when considering that Congress may well have intentionally distinguished between the remedies for ADA discrimination claims and ADA retaliation claims due to the different nature of the respective claims. "The ADA prohibits discrimination against a qualified individual *with a disability* in regard to terms, conditions and privileges of employment." *Gribben*, 528 F.3d at 1169 (citation omitted) (emphasis added). In contrast, a retaliation claim does not necessarily depend on the plaintiff's proof of a disability. Instead, "[a] *prima facie* case of retaliation requires a plaintiff to show: (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Coons v. Sec'y of U.S. Dept. of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (citation and internal quotation marks omitted). Congress may have well advisedly limited punitive and compensatory damage awards to those plaintiffs who are able to prove discrimination due to an actual disability.

Alvarado's claims exemplify this dichotomy. The district court granted summary judgment in favor of Church's on Alvarado's ADA discrimination claim because Alvarado did not raise a material issue of fact regarding whether he was disabled. However, the district court denied summary judgment on Alvarado's retaliation claim because Alvarado's "Hotline complaints clearly constitute a protected activity, regardless of the merit of his discrimination charges."

Because Alvarado raised material issues of fact regarding his retaliation claim, summary judgment was inappropriate.

**[10]** Being persuaded by the Seventh Circuit's reasoning, we hold, as did the Seventh Circuit in *Kramer*, that the plain and unambiguous provisions of 42 U.S.C. § 1981a limit the availability of compensatory and punitive damages to those specific ADA claims listed. ADA retaliation is not on the list.[7] Because we conclude that ADA retaliation claims are redressable only by equitable relief, no jury trial is available. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001) ("The Seventh Amendment preserves the right to trial by jury of all legal claims, whereas no right to a jury exists for equitable claims.") (citation, alterations, and internal quotation marks omitted).

---

[7]Alvarado relies on the EEOC Compliance Manual to support his contention regarding the availability of compensatory and punitive damages. We acknowledge that the EEOC Manual is generally entitled to deference. *See Nilsson v. City of Mesa*, 503 F.3d 947, 954 n.3 (9th Cir. 2007). However, the EEOC Manual does not resolve the statutory interpretation issue we confront. Without mentioning § 1981a, the EEOC Manual provides that "[a] 1977 amendment to the Fair Labor Standards Act authorizes both legal and equitable relief for retaliation claims under that Act. Compensatory and punitive damages therefore are available for retaliation claims brought under the EPA and the ADEA, as well as under Title VII and the ADA." *See* EEOC Compliance Manual, 5/20/98, Section 8-III B. and nn. 56-57, available at http://www.eeoc.gov./policy/docs/retal.html, last visited 12/3/09. However, the Manual references only 29 U.S.C. § 216, *Moskowitz v. Trs. of Purdue Univ.*, 5 F.3d 279 (7th Cir. 1993), and *Soto v. Adams Elevator Equip. Co.*, 941 F.2d 543 (7th Cir. 1991). Section 216 and the corresponding cases involve the Fair Labor Standards Act, not Title VII or the ADA. See 29 U.S.C. § 216(b); *Moskowitz*, 5 F.3d at 283; *Soto*, 941 F.2d at 551. Because the EEOC Manual did not contain a reasoned analysis of the issue we address, there is no EEOC position to which we defer. *See E.E.O.C. v. Puget Sound Log Scaling & Grading Bureau*, 752 F.2d 1389, 1391 (9th Cir. 1985) (recognizing that no deference is owed if the EEOC does not provide "a reasoned and supportable interpretation of the applicable statute.") (citation and alteration omitted).

## IV. *CONCLUSION*

**[11]** We adopt the Seventh Circuit's reasoning in *Kramer*, and hold that punitive and compensatory damages are not available for ADA retaliation claims. Because such claims are limited to the equitable relief specified in 42 U.S.C. § 2000e-5(g)(1), the district court correctly concluded that Alvarado was not entitled to a jury trial on his ADA retaliation claims.

**AFFIRMED.**